**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| GRIFFIN BEATY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC.,<br><br>Defendant. | Case No. ________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Griffin Beaty, individually and on behalf of all others similarly situated, asserts the following against Defendant Marquis Software Solutions, Inc. ("Marquis Software"), based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. Marquis Software is a technology vendor that provides customer-relationship management ("CRM"), analytics, and other solutions to hundreds of banks and credit unions.

2. As a vendor that routinely works with financial institutions and handles consumers' financial data, Marquis Software was well aware of the need to adopt robust data security measures to ensure the sensitive data in its custody was adequately protected from unauthorized use and disclosure.

3. It did not. On August 14, 2025, Marquis Software identified suspicious activity on its network and determined that it had fallen victim to a data breach (the "Data Breach"). Criminals were able to access Marquis Software's network through its SonicWall firewall, and ultimately compromised consumers' names, addresses, phone numbers, Social Security numbers, financial account information, and dates of birth ("PII").

4. Marquis Software began notifying its own customers of the Data Breach around

October 27, 2025—months after the breach occurred—and it did not notify actual consumers until approximately November 26, 2025.

5. Marquis Software had a duty to safeguard and protect consumers' PII that was entrusted to it and could have prevented the Data Breach had it implemented and maintained reasonable data security measures and protocols.

6. Marquis Software was fully aware that it was a prime target for cyber threats given its role as a vendor to financial institutions. The prevalence of these types of vendor breaches put it on notice of this fact.

7. The Data Breach was a direct and proximate result of Marquis Software's failure to implement and follow basic security procedures.

8. Because of Marquis Software's failures, unauthorized individuals were able to access and pilfer Plaintiff's and Class Members' PII.

9. As a result, Plaintiff and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiff's and Class Members' PII, including their Social Security numbers, that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

10. Plaintiff seeks damages and injunctive relief requiring Marquis Software to adopt reasonably sufficient practices to safeguard the PII in Marquis Software's custody and control to prevent incidents like the Data Breach from recurring in the future.

11. Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of Marquis Software's systems, remain exclusively in Marquis Software's control, Plaintiff anticipates additional support for his claims will be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Marquis Software.

13. This Court has personal jurisdiction over Marquis Software because Marquis Software maintains its principal place of business in Texas, conducts substantial business in this state and Marquis Software's acts and omissions giving rise to Plaintiff's and the Class's claims occurred in this forum.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Marquis Software's principal place of business is in Plano, Texas and a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District.

## PARTIES

### I. Plaintiff

15. Plaintiff Griffin Beaty is a citizen and resident of the State of California.

16. Plaintiff Beaty has an account with Valley Strong Credit Union, which is one of the institutions impacted by the Data Breach.

### II. Defendant

17. Marquis Software is a for-profit corporation incorporated in Texas, with its principal place of business located at 6509 Windcrest Drive, Suite 180, Plano, Texas 75024.

* * *

## BACKGROUND

### I. Marquis Software Obtains, Collects, and Stores PII

18. Marquis Software is a technology vendor providing marketing, CRM, and other software solutions to credit unions and banks. The entire purpose of its software is to "bring[] together all of [its clients] data" in a central location to drive customer engagement.[1]

19. Marquis Software is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

20. Marquis Software was entrusted with Plaintiff's and the Class's PII and was expected to secure and safeguard that information. Indeed, Marquis Software acknowledges that it handles sensitive types of data in its Privacy Policy and represents that it "build[s] security into [its] services in order to protect [consumers'] information" and that it "use[s] commercially reasonable and appropriate safeguards to secure and protect the privacy, accuracy, and reliability of [consumers'] information and to protect it from unauthorized access, alteration, disclosure, or destruction."[2]

21. Marquis Software did not properly verify, oversee, and supervise its entrustment of Plaintiff's and Class Members' PII.

22. By obtaining, using, disclosing, and deriving a benefit from Plaintiff's and Class Members' PII, Marquis Software assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

23. Plaintiff and Class Members reasonably expect that a vendor to financial institutions such as Marquis Software would use the utmost care to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

24. Marquis Software failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and

[1] MARQUIS, https://gomarquis.com/ (last visited December 5, 2025).
[2] *Privacy Policy*, MARQUIS, https://gomarquis.com/privacy-policy (last updated October 20, 2025).

Class Members' PII.

25. Had Marquis Software followed industry guidelines and adopted reasonable security measures, Marquis Software would have prevented the theft of Plaintiff's and Class Members' PII.

## II. FTC Guidelines

26. Marquis Software is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

27. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

28. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand its network's vulnerabilities, and implement policies to correct any security problems.

29. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

30. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

31. Marquis Software failed to properly implement basic data security practices. Marquis Software's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

32. Marquis Software was always fully aware of its obligations to protect the PII of consumers because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information. Marquis Software was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

### I. The Data Breach

33. The Data Breach occurred on August 14, 2025 and was accomplished by accessing Marquis Software's network through its SonicWall firewall. Cyber criminals ultimately compromised consumers' PII, including names, addresses, phone numbers, Social Security numbers, financial account information, and dates of birth.

34. Marquis Software began notifying its own customers of the Data Breach around October 27, 2025 and did not notify actual consumers until approximately November 26, 2025. Consumers at over 74 banks and credit unions were ultimately impacted by the Data Breach.

35. Plaintiff's and the Class's PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

36. As a result of the Data Breach, Plaintiff spent significant time and effort researching

the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

37. Plaintiff places significant value in the security of their PII. Plaintiff expected that their PII would be safeguarded by their financial institutions and their vendors. Marquis Software obtained this PII with the understanding that it would keep this information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

38. As a result of the Data Breach, Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**II. Marquis Software's Data Security Failures Caused the Data Breach**

39. According to the data breach notification filed by CoVantage Credit Union,[3] Marquis Software has implemented the following changes to its data security practices following the Data Breach: "(1) ensuring that all firewall devices are fully patched and up to date, (2) rotating passwords for local accounts, (3) deleting old or unused accounts, (4) ensuring that multi-factor authentication is enabled for all firewall and virtual private network ("VPN") accounts, (5) increasing logging retention for firewall devices, (6) applying account lock-out policies at the VPN for too many failed logins, (7) applying geo-IP filtering to only allow connections from specific countries needed for business operations, and (8) applying policies to automatically block connections to/from known Botnet Command and Control servers at the firewall."

40. These changes confirm that Marquis Software did not have these practices and protocols in place prior to the Data Breach and that the breach likely occurred by gaining access to one of Marquis Software's VPN accounts. As reported by *Bleeping Computer*, this is a "known

---

[3] *Re: Notice of Data Breach,* COVANTAGE, https://mm.nh.gov/files/uploads/doj/remote-docs/covantage-credit-union-marquis-software-solutions-20251126.pdf (last visited December 5, 2025).

tactic" used by "ransomware gangs."[4]

41. Marquis Software's failure to use these basic precautions that could have prevented the Data Breach was negligent and a breach of its duties to safeguard Plaintiff's and the Class's PII.

## III. Marquis Software's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights

42. The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

43. In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

44. The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

45. The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to

---

[4] Lawrence Abrams, *Marquis data breach impacts over 74 US banks, credit unions*, BLEEPING COMPUTER, https://www.bleepingcomputer.com/news/security/marquis-data-breach-impacts-over-74-us-banks-credit-unions/ (December 3, 2025).

businesses regarding their data security obligations.

46. Prior to the Data Breach, and during the Data Breach itself, Marquis Software failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

47. Furthermore, by failing to have reasonable data security measures in place, Marquis Software engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

## IV. The Value of the Disclosed PII and Effects of Unauthorized Disclosure

48. Marquis Software understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

49. PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

50. Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

51. The forms of PII involved in this Data Breach are particularly concerning. Unique Social Security numbers cannot be easily replaced. And even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person’s relationships with government agencies and any number of private companies in order to update the person’s accounts with those entities.

52. The Social Security Administration warns that the process of replacing a social

security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.

53. Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

54. The ramifications of Marquis Software's failure to keep Plaintiff's and Class Members' PII secure are long-lasting and severe.

55. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

56. Thus, Marquis Software knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. Marquis Software failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

57. As a highly sophisticated party that handles sensitive PII, Marquis Software failed to establish and/or implement appropriate administrative, technical, and/or physical safeguards to ensure it protected the security and confidentiality of Plaintiff's and Class Members' PII to protect against anticipated threats of intrusion of such information.

58. Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud, and government fraud.

59. The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

60. There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

61. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

62. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

63. Plaintiff and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

64. Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**V. The Data Breach Damaged Plaintiff and Class Members**

65. As a result of Marquis Software's deficient security measures, Plaintiff and Class Members have been harmed by the compromise of their sensitive PII, which is likely for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

66. Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their dates of birth and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

67. Plaintiff has been damaged as a result of the Data Breach, *inter alia*, as described above.

68. Many Class Members will also incur out-of-pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

69. Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII. Hackers sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of

value to Plaintiff and Class Members.

70. Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiff and Class Members gathered from underground sources, public sources, or even Plaintiff's and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiff and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class Members' names, taking out loans in Plaintiff's and Class Members' names, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class Members' information, obtaining Social Security numbers in Plaintiff's and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

71. Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because Marquis Software has disclosed little information about the Data Breach, forcing consumers to continue to monitor their accounts indefinitely.

72. In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

73. A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become

aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII was compromised in the Data Breach.

75. Excluded from the Class is Marquis Software, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Marquis Software has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

76. Plaintiff reserves the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

77. Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78. **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believe that there are likely hundreds of thousands of members of the Class, the precise number of Class Members is not yet known to Plaintiff.

79. Class Members may be identified through objective means. Class Members may be

notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

80. **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether Marquis Software engaged in active misfeasance and misconduct alleged herein;

b. Whether Marquis Software owed a duty to Class Members to safeguard their sensitive PII;

c. Whether Marquis Software failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d. Whether Marquis Software breached its duty to Class Members to safeguard their sensitive PII;

e. Whether Marquis Software's conduct violated the FTC Act;

f. Whether Marquis Software's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

h. Whether Marquis Software's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries;

i. Whether Marquis Software owed a duty to provide timely and adequate notice of the Data Breach to Plaintiff and Class Members;

j. Whether Marquis Software failed to notify Plaintiff and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

k. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

81. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

82. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of other Class Members that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the Class's interests.

83. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Marquis Software, so it would be impracticable for Members of the Class to individually seek redress for Marquis Software's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and

increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

84. **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Marquis Software has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

85. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

86. By collecting and maintaining sensitive PII, Marquis Software had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. Marquis Software's duty included a responsibility to implement processes to prevent unauthorized access to its network, including by implementing multi-factor authentication and other precautions.

87. Marquis Software owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and Class Members' PII in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

88. Marquis Software owed a duty of care to Plaintiff and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

89. Marquis Software's duty of care also arose as a result of the special relationship that existed between Marquis Software and Plaintiff and Class Members. The special relationship

arose because Marquis Software was entrusted with Plaintiff's and the Class's PII. Only Marquis Software was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiff and Class Members.

90. Marquis Software's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal and confidential information. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.

91. Marquis Software was subject to an "independent duty" untethered to any contract.

92. Marquis Software also owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII. Marquis Software also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

93. Marquis Software owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Marquis Software knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Marquis Software actively sought and obtained the PII of Plaintiff and Class Members.

94. Given the vast amount of highly valuable PII that Marquis Software aggregates, the risk that unauthorized persons would attempt to gain access to Plaintiff's and Class Members' PII

and misuse it was foreseeable.

95. Marquis Software knew or should have known the importance of exercising reasonable care in handling the PII entrusted to it.

96. Given the nature of Marquis Software's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Marquis Software should have identified and foreseen vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiff's and Class Members' PII.

97. It was or should have been reasonably foreseeable to Marquis Software that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

98. It was also foreseeable that Marquis Software's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members.

99. Marquis Software breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. But for Marquis Software's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Marquis Software include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b. Failing to comply with—and thus violating—FTC Act and its regulations;

c. Failing to adequately monitor the security of its networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiff's and Class Members' PII;

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

100. It was foreseeable that Marquis Software's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members.

101. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

102. Plaintiff and Class Members had and have no ability to protect their PII that was, or remains, in Marquis Software's possession and control.

103. But for Marquis Software's negligent conduct or breach of the above-described duties, Plaintiff's and Class Members' PII would not have been compromised. The PII of Plaintiff and the Class was accessed and stolen as the proximate result of Marquis Software's failure to exercise reasonable care in safeguarding, securing, and protecting such PII by implementing and maintaining appropriate security measures.

104. Marquis Software's failure to take proper security measures created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiff's and Class Members' PII.

105. Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their PII.

106. As a direct and proximate result of Marquis Software's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the

Data Breach in an amount to be proven at trial.

107. Plaintiff and Class Members are also entitled to injunctive relief requiring Marquis Software to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT II
## DECLARATORY AND INJUNCTIVE RELIEF

108. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

109. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

110. An actual controversy has arisen in the wake of the Data Breach regarding Marquis Software's present and prospective common law and statutory duties to reasonably safeguard its consumers' sensitive PII and whether Marquis Software is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that Marquis Software's data security practices remain inadequate.

111. Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII will occur in the future.

112. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Marquis Software continues to owe a legal duty to secure Class Members' PII and to timely notify Class Members of a data breach under the common law and Section 5 of the FTC Act; and

b. Marquis Software continues to breach this legal duty by failing to employ reasonable measures to secure Class Members' PII, including to monitor, oversee, and audit its compliance with applicable industry standards, laws, and regulations.

113. The Court also should issue corresponding prospective injunctive relief requiring Marquis Software to employ adequate security protocols consistent with law and industry standards to protect Marquis Software's consumers' sensitive PII.

114. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach occurs, Plaintiff and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

115. The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to Marquis Software if an injunction is issued. If another data breach occurs, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Marquis Software of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Marquis Software has a pre-existing legal obligation to employ such measures.

116. Issuance of the requested injunction will serve the public interest by preventing another data breach concerning Marquis Software's consumers' PII, thus eliminating the additional injuries that would result to Plaintiff and the thousands of consumers whose confidential information would be further compromised.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, request that the Court enter judgment against Marquis Software including the following:

A. Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B. Appointing Plaintiff as representatives of the applicable Class and appointing Plaintiff's counsel as Class Counsel;

C. Awarding Plaintiff and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D. Ordering injunctive relief requiring Marquis Software to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E. Entering a declaratory judgment stating that Marquis Software owes a legal duty to secure its consumers' sensitive PII, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F. Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

G. Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

117. Plaintiff demands a trial by jury for all issues so triable.

Dated: December 8, 2025

Respectfully submitted,

**SOMMERMAN, MCCAFFITY, QUESADA & GEISLER, L.L.P.**

*/s/ Sean McCaffity*
Sean McCaffity
State Bar No. 24013122
3811 Turtle Creek Blvd, Suite 1400
Dallas, TX 75219-4492
Telephone: (214) 720-0720
Facsimile: (214) 720-0184
Email: SMcCaffity@textrial.com

Christian Levis (*pro hac vice forthcoming*)
Amanda G. Fiorilla (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*COUNSEL FOR PLAINTIFF AND THE CLASS*